IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01553-MEH

LUKE IRVIN CHRISCO,

    Plaintiff,

v.

JOANN KOPRIVNIKAR,
WEEKS, MS.,
CHRISTINA MARTINEZ,
LYNN EDWARD TRAVIS, and
JAMES LARIMORE,

    Defendants.

---

**ORDER**

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendants' Motion to Dismiss Second Amended Complaint in Part Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) [filed February 27, 2017; ECF No. 74]. The Motion is adequately briefed, and the Court finds that oral argument will not assist in the adjudication of the Motion. Plaintiff's claims arise out of his interactions with Defendants during his incarceration at San Carlos Correctional Facility ("SCCF"). Defendants assert they are entitled to qualified immunity over Plaintiff's second, third, eighth, and ninth causes of action. For the following reasons, Defendants' Motion is granted in part and denied in part.[1]

---

[1] The parties consented to this Court's jurisdiction pursuant to D.C. Colo. LCivR 40.1 on February 13, 2017. *See* ECF No. 67.

**BACKGROUND**

**I. Facts**

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in the Second Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On September 3, 2014, while Plaintiff was incarcerated at SCCF, Defendant Martinez refused to provide Plaintiff with his nightly dinner tray. Second Am. Compl. ¶ 14. Despite Plaintiff's repeated requests for the tray, Martinez stated that Plaintiff refused his meal. *Id.* Instead of reporting the refusal, as prison policy requires, Martinez falsified documents to represent that Plaintiff received his nightly meal. *Id.* at ¶¶ 15, 17. As a result, Plaintiff experienced significant hunger and had difficulty sleeping. *Id.* at ¶ 18.

Just two weeks later, on September 15, 2014, Defendant Koprivinikar placed Plaintiff on an emergency mental health watch. *Id.* at ¶ 44. During the watch, Dr. Koprivinikar administered a variety of medications involuntarily to Plaintiff. *Id.* at ¶¶ 43–48.

The next day, Plaintiff was brought out of his cell to be transported to a different facility pending his release to parole. *Id.* at ¶ 56. Plaintiff repeatedly requested that Defendants Larimore and Travis provide him with his prescription eyeglasses, because he could see no more than four inches without them. *Id.* at ¶¶ 56–57, 62. Instead of ensuring Plaintiff received his glasses, Larimore ordered that Plaintiff be given a spit mask. *Id.* at ¶ 57. Plaintiff did not receive his glasses until December 2014—over three months after the original incident. *Id.* at ¶ 59. During the time that Plaintiff was without his glasses, he prepared for and appeared in court without the benefit of his

vision. *Id.* at ¶ 62. When Plaintiff eventually returned to SCCF on March 11, 2015, Travis told him that the glasses were in his desk drawer the entire time. *Id.* at ¶ 60.

**II.      Procedural History**

Based on these factual allegations, Plaintiff filed his Second Amended Complaint on February 13, 2017. ECF No. 69. Plaintiff alleges nine causes of action against Defendants in their individual capacities for violations of his constitutional rights. *Id.* at ¶¶ 13, 19, 23, 49, 54, 66, 69. However, only Plaintiff's second, third, eighth, and ninth claims are relevant to the Court's present analysis. Plaintiff's second cause of action asserts a First Amendment retaliation claim against Martinez for allegedly depriving Plaintiff of a food tray. *Id.* at ¶¶ 14–19. Plaintiff's third claim contends Martinez violated Plaintiff's substantive due process rights by covering up facts surrounding the food tray denial. *Id.* at ¶¶ 20–23. Plaintiff brings his eighth claim against Travis and Larimore for denying Plaintiff his prescription eyeglasses in violation of the First and Eighth Amendments. *Id.* at ¶¶ 55–66. Lastly, Plaintiff asserts his ninth cause of action against Dr. Koprivinikar for violating his Ninth Amendment right to privacy. *Id.* at ¶¶ 67–69.

Defendants responded to the Second Amended Complaint by filing the present Motion to Dismiss in Part. Defs.' Mot. to Dismiss, ECF No. 74. Defendants claim they are entitled to qualified immunity over each of the four claims outlined above. *Id.* Defendants contemporaneously filed an Answer to the five claims not contested in the Motion to Dismiss. Answer, ECF No. 75. Plaintiff responded to Defendants' Motion on March 17, 2017. ECF No. 78. Defendants did not file a Reply.

## LEGAL STANDARDS

I.  **Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, the court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

4

## II. Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's pleadings "liberally" and hold the pleadings "to a less stringent standard than formal pleadings filed by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Id.* (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean:

> [I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded.").

## ANALYSIS

Defendants assert they are entitled to qualified immunity over Plaintiff's second, third, eighth, and ninth claims for relief. Defs.' Mot., ECF No. 74. Qualified immunity protects a public official whose violation of a plaintiff's civil rights was not clearly established at the time of the official's actions. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). "A qualified immunity defense is only available to parties sued in their individual capacity." *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). "When faced with a qualified

immunity defense, the plaintiff must establish '(1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions.'" *Beedle*, 422 F.3d at 1069 (quoting *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999)); *Wilson v. Layne*, 526 U.S. 603, 603 (1999); *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).

The Court will address Defendants' entitlement to qualified immunity over each of Plaintiff's claims for relief in turn.

## I. Second Cause of Action: First Amendment Retaliation

Plaintiff's second claim alleges that Martinez retaliated against Plaintiff by denying him a food tray. Second Am. Compl. ¶¶ 14–19. According to Plaintiff, Martinez refused to give Plaintiff his meal because of numerous grievances Plaintiff had filed against SCCF staff "in the preceding months." *Id.* at ¶ 16. In their Motion to Dismiss, Defendants argue the denial of food on one occasion is a de minimis injury that cannot form the basis of a First Amendment retaliation claim. Defs.' Mot. 8. Plaintiff responds by asserting that "many prisoners remain chilled from engaging in legal work in prisons because they have heard stories that prisoners who file grievances suffer the denial of food trays as reprisal." Pl.'s Resp. ¶ 18. The Court agrees with Defendants and holds that Plaintiff has not alleged a violation of his First Amendment right to be free from retaliation.

To assert a First Amendment retaliation claim, a plaintiff must allege the following elements: (1) he was engaged in constitutionally protected activity, (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's action was substantially motivated by the plaintiff's exercise of a constitutionally protected activity. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000);

6

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). In the prison context, courts must treat retaliation claims "with skepticism because 'every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)); *Barksdale v. Connaghan*, No. 10-cv-02491-CMA-CBS, 2011 WL 3664382, at *10 (D. Colo. July 28, 2011). Thus, "it is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922. F.2d 560, 562 n.1 (10th Cir. 1990).

Here, although Plaintiff satisfies the first element of his retaliation claim, *see, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (stating that filing grievances is a constitutionally protected activity), Plaintiff fails to sufficiently allege the second and third elements. To satisfy the second element, Plaintiff must assert that Martinez's actions would chill an ordinary person from continuing to file grievances. *Shero*, 510 F.3d at 1203. A de minimis injury will not support a First Amendment retaliation claim. *See id.* This is especially true in the prison setting, where courts generally require a greater showing of injury. *See, e.g.*, *Poole v. County of Otero*, 271 F.3d 955, 961 (10th Cir. 2001), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). Although a regular and consistent denial of food may keep a prisoner from engaging in protected activity, the Court holds that denying a prisoner only one meal is not a sufficiently significant injury to do so. *See Hale v. Geo Group, Inc.*, No. 11-cv-0128 RB/SMV, 2013 WL 12086758, at *7 (D.N.M. July 26, 2013) ("The Court is not convinced that [the defendant's] denial of a food tray on one occasion was serious enough to chill a person of ordinary firmness from pursuing protected activity.").

Indeed, because Plaintiff has not alleged in the Second Amended Complaint that prisoners regularly suffer this treatment, Plaintiff had no reason to suspect that he would undergo subsequent denials.

Moreover, although certainly not dispositive, persistence in speech is some evidence that the defendant's actions would not prevent such speech. *See Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) ("Smith's persistence in maintaining his website offers some evidence that Plati's actions did not prevent such private speech."); *How v. City of Baxter*, 217 F. App'x 787, 798 (10th Cir. 2007) (holding that the defendant was entitled to qualified immunity on the plaintiff's First Amendment retaliation claim, in part, because the plaintiff "continued to exercise his First Amendment rights thereafter . . . ."). Here, it is undisputed that after the denial of a food tray, Plaintiff continued to file lawsuits, such as the present case. This provides further support for the conclusion that the denial of one food tray would not dissuade a person of ordinary firmness from continuing to engage in protected conduct.

Plaintiff also fails to allege that Martinez's actions were substantially motived by Plaintiff's exercise of a constitutionally protected activity. *Worrell*, 219 F.3d at 1212. Plaintiff's only allegation regarding the third element is that Martinez "denied the food for the sole purpose of punishing Plaintiff for his legal activities and in an attempt to break his will to continue with his grievances and cases." Second Am. Compl. ¶ 17. This allegation does not state "specific facts showing retaliation." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quoting *Frazier*, 922 F.2d at 562 n.1). Instead, it does nothing more than allege Plaintiff's "personal belief that he is a victim of retaliation."[2] *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *Sherratt v. Utah*

---

[2] Although Plaintiff attached an exhibit to his First Amendment Complaint that lists all of the grievances he filed while incarcerated at SCCF, this document does not list any grievances previously filed against Martinez. *See* Am. Compl. 24–27, ECF No. 12.

8

*Dep't of Corrs.*, 545 F. App'x 744, 748 (10th Cir. 2013) (holding that a prisoner failed to state a retaliation claim, because he did not indicate "what grievances he had previously filed that provoked this action or their proximity in time to the alleged retaliatory action").

Even if Plaintiff had alleged the second and third elements of a First Amendment retaliation claim, Martinez would be entitled to qualified immunity, because the law is not clearly established. The only Tenth Circuit or Supreme Court case potentially establishing that denying a food tray violates a prisoner's First Amendment right is *Strope v. Sebelius*, 189 F. App'x 763 (10th Cir. 2006).[3] In that case, the prisoner claimed that officials burned his kosher meal the day after he filed a grievance, and that after filing a grievance about the burnt food, prison officials served him a spoiled turkey sandwich. *Id.* at 767. Additionally, the plaintiff alleged that "prisoners on a kosher diet are routinely served spoiled food . . . ." *Id.* at 766. The court held that the prisoner alleged specific facts showing retaliation because of his constitutional rights. *Id.* at 767. However, unlike *Strope*, Martinez denied Plaintiff food on only one occasion, which Plaintiff does not allege directly followed a grievance against Martinez. Instead, Plaintiff asserts only that "[t]he food tray denial was done in retaliation for plaintiff filing numerous GRs against staff at DRDC and SCCF in the preceding months . . . ." Second Am. Compl. ¶ 16. Because frequent denials directly following grievances are more likely to chill speech and be motivated by retaliation, the Court finds that *Strope* would not have put a reasonable official on notice that Martinez's conduct violated Plaintiff's

---

[3] The Court notes that for purposes of qualified immunity, it is not the general right to be free from retaliation for filing grievances that must be clearly established. *See Reichle v. Howards*, 566 U.S. 658 (2012); *Matson v. Hrabe*, 612 F. App'x 926, 930 (10th Cir. 2015). Instead, it is the more specific right to be free from the retaliatory conduct at issue in the case. *Matson*, 612 F. App'x at 930 ("[T]he right in this case is not the right to be free from retaliation from filing grievances, but the more specific right to be free from a retaliatory transfer to another general-population unit in the same prison.").

constitutional rights.

Moreover, although not binding on this Court for qualified immunity purposes, the Court finds this case similarly distinct from *Wolters v. Estate of Conner*, No. 03-3251-KHV, 2005 WL 1842841 (D. Kan. July 29, 2005). In that case, the court found the plaintiff stated a First Amendment retaliation claim, because the prison's warden "instructed staff to discontinue hot dinner meals, cut food portions and deny plaintiff heart healthy meals." *Id.* at *6. The plaintiff's injury—regular and consistent denials of meals at the direction of the prison's warden—is much more severe than the denial of a meal tray on a single occasion. Therefore, the Court finds the law does not clearly establish that Martinez's conduct violated Plaintiff's constitutional rights.

In sum, the Court concludes that Martinez is entitled to qualified immunity over Plaintiff's second cause of action, because Plaintiff fails to allege the second and third elements of his First Amendment retaliation claim. Moreover, even if Plaintiff properly asserted a constitutional violation, Martinez would be entitled to qualified immunity, because the conduct does not violate clearly established law.

## II. Third Cause of Action: Substantive Due Process Violation

Plaintiff's third claim for relief asserts that Martinez violated Plaintiff's Fourteenth Amendment substantive due process right by denying Plaintiff a meal tray and falsifying food provision records. Second Am. Compl. ¶¶ 20–23. Defendants argue that the deprivation of a single meal, even if done intentionally, does not "shock the conscience."[4] Defs.' Mot. 12. Plaintiff

---

[4] Although Defendants also address whether Plaintiff states a procedural due process claim, the Court does not find this analysis necessary, as Plaintiff makes clear that he brings his claim only under the substantive component of the due process clause. In his Second Amended Complaint, Plaintiff states that the alleged conduct would "shock the conscience" of a federal judge, which is the standard for a substantive due process violation. Second Am. Compl. ¶ 21. Additionally, in his

responds that spoilation and obstruction of evidence related to possible civil claims is certainly conscience shocking. Pl.'s Resp. ¶¶ 22–24. The Court agrees with Defendants, and holds that Martinez is entitled to qualified immunity over Plaintiff's third cause of action.

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). However, "the Supreme Court has emphasized 'that only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *Williams v. Berry*, 519 F.3d 1216, 1220 (10th Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). "The tortious conduct alleged 'must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing *government* power. . . . It must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'" *Id.* at 1221 (quoting *Livsey v. Salt Lake County*, 275 F.3d 952, 957–58 (10th Cir. 2001)). Therefore, "[e]ven most intentionally inflicted injuries caused by misuse of government authority will not meet this standard." *Koessel v. Sublette Sheriff's Dep't*, 717 F.3d 736, 750 (10th Cir. 2013).

Here, although depriving a prisoner of a meal and covering up facts about the deprivation is certainly wrongful, the Court does not find it to be among the most egregious official conduct that gives rise to a claim under the Fourteenth Amendment. In *Russell v. Wilkinson*, the court found that discontinuation of kosher meals without justification, although wrongful, did not shock the

---

Response, Plaintiff refers to his claim as for denial of substantive due process under the Fourteenth Amendment. Pl.'s Resp. 5.

conscience. 79 F. App'x 175, 178 (6th Cir. 2003). Other courts have found that acts as egregious as pulling hair and allegedly giving a prisoner whiplash, although intentionally inflicted, did not rise to the conscience-shocking level. *Rockette v. Ramirez*, No. 14-cv-02178-RBJ-MJW, 2015 WL 350804, at *3 (D. Colo. Jan. 27, 2015).

Furthermore, although Plaintiff does not specifically assert an Eighth Amendment claim arising from the meal deprivation, courts have found the Eighth Amendment standard relevant to the "shocks the conscience" analysis. *Lunsford v. Bennett*, 17 F.3d 1574, 1583 (7th Cir. 1994) (stating that substantive due process rights "are essentially coextensive with Eighth Amendment prohibitions against cruel and unusual punishment," and holding that "[b]ecause we find no cruel and unusual punishment in this case, there can similarly be no deprivation of substantive due process rights"); *Allen v. Clements*, 930 F. Supp. 2d 1252, 1270 (D. Colo. 2013) ("[T]he Court's finding that plaintiffs do not state an Eighth Amendment claim weighs heavily against their substantive due process claim."). To state an Eighth Amendment food deprivation claim, a plaintiff must show a significantly serious deprivation of food. *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (stating that a deprivation of an inmate's right to receive adequate food "must be objectively 'sufficiently serious'"), *superseded by statute on other grounds*, 42 U.S.C. § 1997e; *Toevs v. Milyard*, 563 F. App'x 640, 646 (10th Cir. 2014) (holding that "[a] one-time denial of 'nine consecutive meals' during a three-day period . . . does not rise to the level of a constitutional violation . . . ."). Therefore, the Court finds that the denial of a single meal, although wrongful, would not rise to the level of cruel and unusual punishment. This supports the Court's holding that the deprivation of a meal and the subsequent falsification of records regarding that deprivation is not conscience shocking.

12

Because Plaintiff has not alleged a violation of his Fourteenth Amendment rights, the Court holds that Martinez is entitled to qualified immunity over Plaintiff's third claim for relief. Moreover, even if Plaintiff had alleged a constitutional violation, Martinez would be entitled to qualified immunity, because there is no Tenth Circuit or Supreme Court precedent clearly establishing that the denial of one meal would shock the conscience of federal judges.

### III. Eighth Cause of Action: Eighth Amendment Violation and First Amendment Retaliation

Plaintiff's eighth claim asserts that Travis and Larimore violated Plaintiff's First and Eighth Amendment rights when they refused to give him his prescription eyeglasses before transferring him to another facility.[5] Second Am. Compl. ¶¶ 55–64. Regarding Plaintiff's retaliation claim, Defendants contend Plaintiff fails to allege the second and third elements. Defs.' Mot. 13–15. According to Defendants, Plaintiff has suffered only a de minimis injury. *Id.* Moreover, Defendants contend there is no evidence that they were motivated by a desire to keep Plaintiff from filing further grievances. *Id.* Plaintiff asserts that the denial of prescription eyeglasses is significant, because he is unable to see more than four inches without vision correction. Pl.'s Resp. ¶ 41. Additionally, Plaintiff contends that Defendants could have been motivated by a desire to suppress Plaintiff's speech, because Plaintiff was free to file lawsuits after leaving SCCF. *Id.* at ¶ 57. Defendants do not directly address Plaintiff's claims under the Eighth Amendment.

The Court will first analyze whether Plaintiff states a claim under the Eighth Amendment.

---

[5] Although Plaintiff's heading does not state that he brings this claim under the Eighth Amendment, the allegations make clear that Plaintiff also asserts an Eighth Amendment claim. *See* Second Am. Compl. ¶ 65 (stating that Plaintiff was punished in a cruel and unusual manner); *id.* at ¶ 66 (requesting a finding that Plaintiff's rights under the First and Eighth Amendments were violated).

Then, the Court will address whether Plaintiff properly alleges that Defendants denied him eyeglasses in retaliation for his protected conduct. The Court finds that Plaintiff states claims under both amendments.

    A.    <u>Eighth Amendment Claim</u>

To state an Eighth Amendment claim for deliberate indifference to serious medical needs, a plaintiff must satisfy objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "The objective component of the test is met if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). The subjective component requires the plaintiff to allege the defendant disregarded a known substantial risk of harm by failing to take reasonable measures to abate it. *Callahan*, 471 F.3d at 1159.

Here, Plaintiff alleges that Defendants declined his repeated requests for his eyeglasses before transferring him to another facility. Second Am. Compl. ¶¶ 56–57. The Court finds that Plaintiff's allegations state an Eighth Amendment claim. Regarding the objective component, prescription eyeglasses require approval of a physician. *See Sealock*, 218 F.3d at 1209 (stating that a medical need is sufficiently serious if it has been diagnosed by a physician). Moreover, because Plaintiff alleges he could see only four inches, a lay person would clearly recognize Plaintiff's need for glasses. Second Am. Compl. ¶ 62.

As for the subjective component, Plaintiff refused to leave SCCF until he received his glasses, and he repeatedly told Defendants the eyeglasses were necessary. *Id.* at ¶¶ 56–57. Additionally, because Plaintiff could not see more than four inches without his glasses, it is reasonable to assume Defendants regularly saw Plaintiff with them. *See id.* at ¶ 62. Finally, once Plaintiff returned to SCCF, Travis allegedly told Plaintiff he had the glasses in his desk drawer the entire time and joked that Plaintiff "won this one." *Id.* at 60. The Court finds these allegations sufficient to demonstrate that Defendants knew Plaintiff desperately needed eyeglasses and failed to take reasonable measures to meet his need. Moreover, Defendants' conduct, as alleged, violated clearly established Tenth Circuit precedent.[6] *Mitchell v. Maynard*, 80 F.3d 1433, 1443 (10th Cir. 1996) (stating that the "denial of prescription eyeglasses can violate the Eighth Amendment when the eyeglasses represent a serious medical need" (citing *Benter v. Peck*, 825 F. Supp. 1411, 1419 (S.D. Iowa 1996))).

In their Motion, Defendants argue that prisons have no duty to provide those not incarcerated with medical care. Defs.' Mot. 14. According to Defendants, because Plaintiff was released from SCCF, Plaintiff has not stated a claim. *Id.* However, Defendants' argument overlooks that Larimore and Travis allegedly deprived Plaintiff of his eyeglasses while Plaintiff was still inside the prison. If Plaintiff's eye condition had developed after he was released to parole, the prison would have no

---

[6] The Court notes that it is Plaintiff's burden to come forth with clearly established law. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Although Plaintiff did not provide Tenth Circuit or Supreme Court precedent demonstrating that Defendants' conduct violated clearly established law, the Court will not grant Defendants' Motion on this basis. *See Salazar v. White*, No. 14-cv-02081-RM-CBS, 2015 WL 5781650, at *3 (D. Colo. Oct. 5, 2015) (rejecting the defendant's argument that the pro se plaintiff's complaint should be dismissed because of the plaintiff's failure to show what clearly established law the defendant violated). Indeed, Plaintiff's pro se status requires courts to make some allowance for a pro se litigant's "failure to cite proper legal authority . . . ." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

duty to fit Plaintiff with glasses. However, Plaintiff alleges he was deprived of prescription eyeglasses before his release while the prison still had a duty to provide him with adequate medical care. To hold otherwise would mean that a prison official could intentionally deny a prisoner assistive devices, release the prisoner, and then wash his hands of the entire incident. The Eighth Amendment does not permit such a result. Therefore, the Court finds that Plaintiff has sufficiently stated a claim under the Eighth Amendment.

### B. First Amendment Claim

Plaintiff's eighth cause of action also asserts a First Amendment retaliation claim. Second Am. Compl. ¶¶ 65–66. According to Plaintiff, Defendants refused to give him his eyeglasses because of previous grievances he had filed. *Id.* at ¶¶ 61, 65. As previously stated, a retaliation claim requires the plaintiff to prove that: (1) he was engaged in constitutionally protected activity, (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's action was substantially motived by the plaintiff's exercise of a constitutionally protected activity. *Worrell*, 219 F.3d at 1212.

Here, Plaintiff satisfies the first element, because it is well established that filing grievances constitutes a protected activity. *See, e.g.*, *Gee*, 627 F.3d at 1189. Regarding the second element, the Court finds that denying Plaintiff his necessary eyeglasses for over three months is more than a de minimis injury. Plaintiff alleges that during the three-month period, he appeared in court and otherwise conducted activities of daily living without the benefit of being able to see. Second Am. Compl. ¶ 62. The Court finds that this harm would deter a person of ordinary firmness from continuing to file grievances and lawsuits. Moreover, the Court has already found that Plaintiff's

allegations are sufficient to state a claim an Eighth Amendment violation, which lends support to the Court's holding that the injury is not de minimis. *Allen v. Avace*, 491 F. App'x 1, 6 (10th Cir. 2012) ("The prospect of punishment severe enough to satisfy the Eighth Amendment is sufficient to 'chill a person of ordinary firmness' from exercising his constitutional rights.").

Defendants argue Plaintiff's injury is de minimis, because Plaintiff could have sought new eyeglasses as a member of the general public on parole. Defs.' Mot. 14. Defendants' argument is unavailing. It is not clear to the Court that Plaintiff had access to free medical care or had the resources to purchase a pair of prescription eyeglasses. Therefore, the fact that Plaintiff could have theoretically paid to receive a new pair of glasses does not render Plaintiff's injury de minimis.

Regarding the third element, although a close call, the Court finds that Plaintiff alleges a causal connection between Plaintiff's grievances and Defendants' actions. First, Plaintiff alleges Larimore fit Plaintiff with a spit mask only to create a reason for not providing Plaintiff with his eyeglasses. Second Am. Compl. ¶ 57. Additionally, Plaintiff asserts that Travis told him the glasses were in Travis's desk the entire time, and joked that Plaintiff "won that one." *Id.* at ¶ 60. These allegations demonstrate that Defendants knew Plaintiff needed his eyeglasses, yet failed to provide them. Moreover, Plaintiff's Second Amended Complaint references a document attached to his First Amended Complaint, which shows Plaintiff filed multiple grievances against Travis prior to the eyeglasses incident. First Am. Compl. 24–27, ECF No. 12. This provides further evidence of Travis's improper motivation. *See Allen*, 491 F. App'x at 6 (stating that a retaliatory act being "close in temporal proximity to the protected activity" provides some evidence of a defendant's substantial motivation).

Defendants argue Plaintiff fails to show they were substantially motivated by a desire to

17

prevent Plaintiff from engaging in protected activity, because Plaintiff was being released on parole, and thus, had no reason to continue filing grievances. Defs.' Mot. 14. However, Defendants' argument overlooks that Defendants could have been motivated by a desire to dissuade Plaintiff from initiating lawsuits against them. *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("It is well established that prison officials may not unreasonably hamper inmates in gaining access to the courts." (quoting *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989))). Moreover, Defendants could have denied Plaintiff his glasses to keep him from filing grievances should he ever return to SCCF, which in fact happened approximately six months after his transfer. *See* Second Am. Compl. ¶ 60. Therefore, the Court holds Plaintiff has sufficiently alleged that Defendants' actions violated Plaintiff's right to be free from retaliation for engaging in activity protected by the First Amendment.

The Court also holds that the alleged violation was clearly established. Although the court cannot locate a Tenth Circuit or Supreme Court case specifically stating that denying an inmate prescription eyeglasses because of his previously filed grievances violates the First Amendment, the Court finds that it would be clear to a reasonable officer that such conduct is unlawful. *See Sayed v. Courtney*, No. 12-cv-01134-CMA-KMT, 2013 WL 708115, at *7 (D. Colo. Feb. 5, 2013) (holding that it would be clear to a reasonable officer that denying an inmate the opportunity to seek medical care is unlawful), *adopted by* 2013 WL 690810 (D. Colo. Feb. 26, 2013). This is especially true given that clearly established Tenth Circuit precedent provides that denying a prisoner prescription eyeglasses may violate the Eighth Amendment. *Mitchell*, 80 F.3d at 1443.

**IV.    Ninth Cause of Action: Ninth Amendment Violation**

Plaintiff's final claim alleges that Dr. Koprivinikar infringed on Plaintiff's right to privacy

under the Ninth Amendment by force medicating Plaintiff in a retaliatory manner. Second Am. Compl. ¶ 68. The Court holds that this claim is improper, because "it is well established that the Ninth Amendment is not an independent source of individual rights, but a rule of construction to be applied in certain cases." *Lomaz v. Lander*, No. 13-cv-0707-WJM-KMT, 2014 WL 1584219, at *6 (D. Colo. Apr. 21, 2014) (holding that the plaintiff's Ninth Amendment claims were "indisputably meritless"); *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) ("[T]he ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim."). As such, the Ninth Amendment cannot form the basis of a Section 1983 civil rights claim. *See Parnisi v. Colo. State Hosp.*, 992 F.2d 1223, at *1 (10th Cir. 1993) (Table) (holding that the appellant's Ninth Amendment claims were "based on indisputably meritless theories," because "the Ninth Amendment only protects those rights not otherwise 'enumerated in the Constitution,' and the Eighth Amendment specifically addresses itself to the mistreatment of prisoners" (quoting U.S. Const. amend. IX)); *McIlrath v. City of Kingman*, No. 12-1002-JAR-KMH, 2012 WL 4359074, at *5 (D. Kan. Sept. 24, 2012) ("The Ninth Amendment is a rule of construction, not an independent source of constitutional rights, so it cannot form the basis of a civil rights claim under § 1983."). Therefore, the Court finds that dismissal of Plaintiff's ninth claim for relief is proper.

## **CONCLUSION**

In sum, the Court finds that Martinez is entitled to qualified immunity over Plaintiff's claims that Martinez deprived Plaintiff of one meal and covered up facts surrounding the denial. Additionally, Plaintiff's Ninth Amendment claim is improper. Therefore, the Court dismisses Plaintiff's second, third, and ninth claims for relief. However, Plaintiff has sufficiently alleged that

19

Defendants' refusal to give Plaintiff his prescription eyeglasses violated his clearly established rights under the First and Eighth Amendments. Accordingly, Defendants' Motion to Dismiss Second Amended Complaint in Part Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) [filed February 27, 2017; ECF No. 74] is **granted in part and denied in part**.

Entered and dated at Denver, Colorado, this 12th day of April, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge